**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MELISSA PHILLIPS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-23-3066** |
| **BRITISH AIRWAYS,** | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

Melissa Phillips claims that, under the Convention for International Carriage by Air ("Montreal Convention"), an international treaty governing liability for claims arising from the contract of carriage between the passenger and carrier, British Airways is strictly liable for damages she sustained after she fell while disembarking from a British Airways plane at Heathrow Airport in London. British Airways moved to dismiss for lack of personal jurisdiction. For the reasons below, the motion to dismiss for lack of personal jurisdiction is granted.

### I.      Background

Phillips alleges the following facts, which the Court accepts as true. At some point before March 20, 2023, Phillips was issued a round-trip airline ticket from Washington Dulles International Airport in Virginia to Ben Gurion Airport in Tel Aviv, Israel, with a layover in Heathrow Airport in London. ECF 1, at 2. On March 21, 2023, Phillips was disembarking from British Airways flight #BA0162 from Ben Gurion Airport to Heathrow Airport when she slipped and fell. *Id.* Phillips alleges that she suffered severe and permanent injuries, incurred medical expenses, and experienced pain and suffering. *Id.*

On November 9, 2023, Phillips filed a complaint against British Airways in this Court, asserting a claim under Article 17 of the Montreal Convention and seeking damages in excess of

128,281 SDRs (special drawing rights).[1] *Id.* at 3. On February 12, 2024, British Airways moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). ECF 35. Phillips opposed the motion. ECF 38. British Airways replied. ECF 39.

## II.     Standard of Review

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the propriety of a particular court's exercise of power over a particular defendant. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020). The inquiry for a Rule 12(b)(2) motion proceeds along similar lines as the inquiry for a Rule 12(b)(6) motion: "[T]he district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). But there is one significant difference: "[A] court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016)). Throughout, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inference for the existence of jurisdiction." *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

## III.    Discussion

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). "[F]or a district court to assert personal jurisdiction over a nonresident defendant,

---

[1] The Montreal Convention uses special drawing rights to calculate damages and allows for up to 128,281 SDRs (about 170,000 USD) in damages for personal injury claims. ECF 38, at 1.

two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), reaches as far as the Due Process Clause permits. *See Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Even so, the Maryland Supreme Court has clarified that it is not "permissible to simply dispense with analysis under the long-arm statute." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006). The fact that the long-arm statute extends as far as due process permits does not mean that the inquiry has only one step. Rather, it means that at the first step—interpreting the statute—"to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." *Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118 n.2 (D. Md. 1995)).

The exercise of personal jurisdiction over a nonresident defendant accords with due process if the court has either general jurisdiction or specific jurisdiction. *See Carefirst*, 334 F.3d at 397. A federal district court has general jurisdiction over a defendant if the defendant's conduct in the state is not the basis for the suit, *see id.*, and the defendant's connections to the state are "so constant and pervasive as to render it essentially at home in the forum State," *Fidrych*, 952 F.3d at 132 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). By contrast, a federal district court has specific jurisdiction over a nonresident defendant if "the defendant has purposefully availed itself of the privilege of conducting activities in the state," "the plaintiff['s] claims arise

out of those activities directed at the state," and "the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.

### A. General Jurisdiction

General jurisdiction allows the Court to hear "any and all claims" against a defendant, regardless of where those claims arise. *Daimler*, 571 U.S. at 123 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). The "paradigm all-purpose forums" where a corporation is subject to general jurisdiction are its place of incorporation and principal place of business. *Id.* at 118. However, a corporation also is subject to general jurisdiction where the "foreign corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 127 (quoting *Goodyear*, 564 U.S. at 919). In addition, a state may require corporate defendants to submit to general jurisdiction in order to register to do business in the state. *Mallory v. Norfolk So. Ry.*, 600 U.S. 122, 134 (2023). Because the Court cannot conclude that British Airways is "at home" in Maryland or that it has submitted to jurisdiction through registration, this Court may not exercise general jurisdiction over British Airways.

### 1. Contacts with Forum

British Airways is headquartered in the United Kingdom and "organized under the laws of the United Kingdom." ECF 35, at 7. Therefore, this Court has general jurisdiction over British Airways only if the company is essentially at home in Maryland. *See Daimler*, 571 U.S. at 127.

Phillips does not claim that British Airways is at home in Maryland. It is not. The most Phillips could plausibly contend is that British Airways has "continuous and systematic" contacts with the state because it operates flights that depart from and arrive in Maryland. However, in *Daimler*, the Supreme Court held that the "at home" exception does not authorize courts to exercise

personal jurisdiction over corporations in every state where they have "continuous and systematic" contacts because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. Rather, the defendant's "continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *Id.* at 138 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945) (emphasis removed)). Accordingly, this Court cannot conclude without more that British Airways is "at home" in Maryland.

The Fourth Circuit's application of *Daimler* proves that point. In *Fidrych v. Marriott International, Inc.*, the appellants challenged the U.S. District Court for the District of South Carolina's decision to grant a motion to dismiss for lack of personal jurisdiction over the hotel chain Marriott, arguing that the court had general jurisdiction. 952 F.3d at 132. The Fourth Circuit held that it did not. *Id.* at 134. As the Fourth Circuit explained, the Supreme Court's ruling in *Daimler* did not allow for general jurisdiction in South Carolina because "there is nothing that would distinguish Marriott's relationship with South Carolina from its relationship with any of the other states where it does business but where it is not incorporated or headquartered." *Id.* This case presents similar facts. There, Marriott operated some of its hotels in the forum state, but these operations were only a small percentage of its overall business. *Id.* Here, British Airways offers flights in and out of Baltimore/Washington International Thurgood Marshall Airport (BWI), as it does in many states and foreign countries. Just as the plaintiff in *Fidrych* could not demonstrate that Marriott, a national hotel chain, had a unique relationship with the forum state, neither can Phillips demonstrate that British Airways, an international carrier, has a relationship with Maryland distinguishable from its relationship with other states. So Phillips has not carried her burden of establishing a prima facie case for general jurisdiction. *See Hawkins*, 935 F.3d at 226.

Nevertheless, Phillips alleges that the Court has general jurisdiction over British Airways under the Montreal Convention, because the Convention allows plaintiffs to file suit in the "state of their principal and permanent residence." ECF 38, at 11. Without citing any cases, Phillips argues that it would "run contra to the Convention" to deny her the opportunity to sue in Maryland, the state where she resides. *Id.* at 12.

Phillips' argument is meritless. As Phillips concedes, federal courts have interpreted the word "state" in the jurisdictional provision of this treaty to mean "the United States." *Id.* at 11. The federal courts that have considered this issue have concluded that this jurisdictional provision—Article 33, S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000)—has no bearing on personal jurisdiction. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 74 (2d Cir. 2023), *cert. denied*, 2024 WL 71971 (mem.) (U.S. Jan. 8, 2024); *Hardy v. Scandinavian Airlines Sys.*, No. 21-cv-1591, 2023 WL 5173793, at *4–5 (E.D. La. Aug. 11, 2023); *Fisher v. Qantas Airways Ltd.*, 521 F. Supp. 3d 847, 855 (D. Ariz. 2021). And in a different context, the Fourth Circuit has held that treaties do not confer personal jurisdiction because personal jurisdiction must be "proper under the Constitution." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 212 (4th Cir. 2002) (holding that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards "does not confer personal jurisdiction when it would not otherwise exist"). In the absence of any case law for Phillips' claim that the Montreal Convention provides an independent basis for general jurisdiction, the Court rejects Phillips' argument.

### 2. Consent

Phillips next argues that British Airways consented to general jurisdiction by registering to do business in Maryland and naming an agent of process. Under Maryland law, it did not.

In support of this assertion, Phillips argues that the Supreme Court decision in *Mallory v. Norfolk Southern Railway Company*, 600 U.S. 122 (2023), should apply to this case. In *Mallory*, a railway company challenged the constitutionality of a Pennsylvania statute that required out-of-state corporations to consent to general jurisdiction when they registered in the state. *Id.* at 127. The Supreme Court held that it did not violate due process for states to enact statutes "requiring an out-of-state corporation to consent to personal jurisdiction to do business there." *Id.* But *Mallory* is irrelevant because Maryland does not have this requirement. Maryland does require foreign corporations to register with the Department of State before conducting business. Md. Code Ann., Corps. & Ass'ns § 7-202(a). But this statute explicitly provides that registration in Maryland "(1) [d]oes not of itself render a foreign corporation subject to suit in this State; and (2) [i]s not considered as consent by it to be sued in this State." Corps. & Ass'ns § 7-210. Registering to do business in Maryland and appointing an agent for service of process are "of no special weight" in establishing personal jurisdiction. *Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730, 732 (D. Md. 2003) (citing *Ratliff v. Cooper Lab'ys, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971)). So even though it would be constitutional for Maryland to require British Airways to consent to general jurisdiction to do business in the state, Maryland has not done that.

Similarly, the fact that British Airways appointed a resident agent for service of process in Maryland does not confer general jurisdiction on its own either. Phillips insists it does, citing *Springle v. Cottrell Engineering Corporation*, 391 A.2d 456 (Md. App. Ct. 1978). But *Springle* is no help to her. True, the *Springle* Court held that service of process upon a resident agent of a foreign corporation will subject a corporation to jurisdiction. *Id.* at 469. But only if "it is shown that the corporation has sufficient contact with the State to make it constitutionally subject to suit here." *Id.* As the Court has explained, Phillips has not shown that British Airways has sufficient

contact with the state to be constitutionally subject to general jurisdiction here. Accordingly, the Court concludes that appointing a resident agent for service of process in Maryland does not confer general jurisdiction over British Airways in the state.

Therefore, British Airways' registration to do business in the state of Maryland and its appointment of an agent for service of process do not confer general jurisdiction in this case. Because Phillips has not demonstrated that British Airways is "at home" in Maryland or that it has consented to personal jurisdiction, the Court cannot exercise general jurisdiction over British Airways.

### B.  Specific Jurisdiction

With general jurisdiction off the table, Phillips must demonstrate that this Court has specific jurisdiction. Specific jurisdiction exists if, but only if, "(1) the exercise of jurisdiction [is] authorized under the state's long-arm statute; and (2) the exercise of jurisdiction [] comport[s] with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396. Maryland's long-arm statute limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated in the statute itself." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). The statute authorizes jurisdiction over a party who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the

State at the time the contract is made, unless the parties otherwise provide in writing.

*Id*. § 6-103(b).

Phillips argues that three of these circumstances apply here: § 6-103(b)(1), (2), and (4). They do not.

### 1. Sections 6-103(b)(1) and 6-103(b)(2)

Section 6-103(b)(1) "authorizes jurisdiction over a party who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State." "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Cranford v. Tenn. Steel Haulers, Inc.*, No. ELH-17-2768, 2018 WL 3496428, at *5 (D. Md. July 20, 2018) (quoting *Aphena Pharma Sols.-Md. LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012)). "'[S]everal contacts related to the cause of action only tangentially' do not establish personal jurisdiction." *Id.* (quoting *Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 428 (Md. App. Ct. 2017)). Courts generally hold that business practices only tenuously connected to the cause of action are not enough to confer specific jurisdiction. *Aphena*, 912 F. Supp. 2d at 326 (holding that there was no personal jurisdiction despite some initial contact and payment from Maryland because most of the negotiations occurred out-of-state); *see also Cranford*, 2018 WL 3496428, at *5 (holding that there was no personal jurisdiction in a negligence case when the alleged negligence did not occur in Maryland).

Phillips argues that because British Airways leases space in BWI, employs people in Maryland, and contracts with passengers in the state, there is specific jurisdiction under § 6-103(b)(1). She is incorrect. These business practices have no connection to her cause of action. By any account, British Airways' activity in Maryland has no connection to Phillips' fall. Phillips did

not fly out of or into BWI; she flew out of and into Dulles. Phillips does not even allege that she bought her airplane ticket in Maryland. And the evidence she submitted in support of her bid to keep this case in this Court indicates she did not buy the ticket in Maryland. The copy of the ticket attached to Phillips' opposition indicates that she received the ticket from a travel agency located in Washington, D.C.[2] ECF 38-5, at 2. Even if Phillips had alleged that she sent payment for the ticket from Maryland—which she does not[3]—that alone would not provide a basis for jurisdiction. In *Rao v. Era Alaska Airlines*, the plaintiffs sued an Alaska airline in Maryland for loss of personal property on an intra-Alaska flight. 22 F. Supp. 3d 529, 533 (D. Md. 2014). Their sole basis for personal jurisdiction was that they bought the tickets in Maryland using an internet travel site. *Id.* The court held that the single purchase of tickets did not confer specific jurisdiction in Maryland. *Id.* at 540. The same applies here. Even if Phillips purchased the ticket in Maryland, that purchase would not confer specific jurisdiction over British Airways.

Section 6-103(b)(2) of the long-arm statute secures specific jurisdiction over a party who "[c]ontracts to supply goods, food, services, or manufactured products in the State." This section has been interpreted to apply only to "contracts to supply goods and services in Maryland, irrespective of where the contract was negotiated." *Rao*, 22 F. Supp. 3d at 535 (quoting *A Love of Food LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 370 (D. Md. 2011)). British Airways argues that § 6-103(b)(2) has been interpreted to apply only to breach of contract actions,

---

[2] The Court takes judicial notice that the travel agency is located in Washington, D.C. District of Columbia, CorpOnline, XR Association (File Number 000007705704), https://corponline.dcra. dc.gov/BizEntity.aspx/ViewEntityData?entityId=2785284 (last visited July 23, 2024).

[3] In briefing, Phillips claims for the first time that she bought her ticket in Maryland. The Court does not consider this assertion because a plaintiff may not amend their complaint in briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

but it cites no supporting authority. The Court need not decide that issue, because even if this section applies to personal injury actions such as this one, it is no basis for specific jurisdiction here. Even though British Airways may, as Phillips argues, contract with Maryland residents for goods and services in the state, it did not do so with her in this case. Phillips does not allege she bought her British Airways ticket in Maryland. Even if she had, she does not allege she bought a ticket for a flight that departed from or returned to Maryland. She bought a ticket for a flight that departed from and returned to Virginia. Therefore, § 6-103(b)(2) does not provide a basis for specific jurisdiction.

### 2.  Section 6-103(b)(4)

Section 6-103(b)(4) authorizes jurisdiction over any corporation that

[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

Cts. & Jud. Proc. § 6-103(b)(4).

This section "has been construed as a general jurisdiction statute." *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 250 (D. Md. 2022) (collecting cases). When, as here, the plaintiff's claims do not arise from tortious injury inside Maryland, "the defendant's contacts to the forum must be extensive, continuous, and systematic." *Cong. Bank v. Potomac Educ. Found., Inc.*, No. PWG-13-889, 2014 WL 347632, at *8 (D. Md. Jan. 30, 2014) (quoting *Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *2 (D. Md. June 1, 2012) (internal citations omitted)).

The bar is high. In *Legends Title, LLC v. Capital One, National Association*, the plaintiffs argued that the defendant, a national bank, engaged in a "persistent course of conduct" in Maryland. 659 F. Supp. 3d 637, 645 (D. Md. 2023). The court, following the standard from *Daimler* that a defendant must "essentially be at home" in the State to be subject to general

jurisdiction, concluded that the bank had similar operations in several states, and so it could not be "at home" in all of them, as "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 649–50 (citing *Daimler*, 571 U.S. at 137). Here, as already discussed above, British Airways' contacts with Maryland are not so extensive to render it "at home" in the state. Like the defendant in *Legends Title*, British Airways conducts the same business in multiple states, and its operations in Maryland are not distinguishable from its operations in other states. It cannot be expected to be subject to personal jurisdiction in all of them for injuries that do not occur in them.

To be sure, in *Pandit v. Pandit*, 808 Fed. App'x 179 (4th Cir. 2020), the Fourth Circuit interpreted "persistent course of conduct" differently. *Pandit* was a defamation action by a Maryland resident against two Arkansas residents who the plaintiff alleged had a "home away from home" in Maryland. *Id.* at 184. The Fourth Circuit affirmed the district court's holding that the defendants' contacts were insufficient to authorize jurisdiction under § 6-103(b)(4) because the appellant waived any argument to the contrary. *Id.* at 185. But in an alternative holding, the Fourth Circuit indicated that it would have endorsed the same result if it had reached the merits. *Id.* at 186. Relying on the dictionary definition of "persistent" because Maryland courts had not clearly defined the phrase, the court reasoned that § 6-103(b)(4) authorized specific jurisdiction only where "the contacts resulting from the [defendants'] conduct [were] continuous over a long period of time." *Id.* at 187. Because the defendants' sending letters and taking sporadic vacations to Maryland were not contacts "continuous over a long period of time," they did not constitute persistent conduct. *Id.* So the Fourth Circuit concluded that § 6-103(b)(4) did not confer personal jurisdiction over the defendants.

Although she does not so state explicitly, Phillips may have drawn on this alternative

holding when she argued that because British Airways had continuous contacts with Maryland—operating flights into and out of the state—British Airways is subject to specific jurisdiction under § 6-103(b)(4). However, the Fourth Circuit only held that continuous contacts are necessary to authorize jurisdiction over a defendant, not that they are sufficient. So even if this alternative holding in an unpublished Fourth Circuit decision were the law, it would not imply that this Court has specific jurisdiction over British Airways under § 6-103(b)(4).

Because British Airways does not have sufficient contacts with Maryland to justify the Court exercising general jurisdiction, the Court also cannot exercise specific jurisdiction under § 6-103(b)(4).

### 3. Due Process Analysis

Even if the Court were to conclude that the long-arm statute authorized specific jurisdiction over British Airways—which it does not—the exercise of personal jurisdiction still would have to comport with due process. "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397. The Fourth Circuit uses a three-pronged analysis: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims 'arise out of or are related to' those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted). A plaintiff's claims arise out of a defendant's activity in a forum where the defendant's activity is "the genesis of the dispute." *CFA Inst. v. Inst. of Chartered Fin. Analysis*, 551 F.3d 285, 295 (4th Cir. 2009).

Because Phillips' claims do not "arise out of" and are not sufficiently "related to" British Airways' activities in Maryland, it would not comport with due process for the Court to exercise jurisdiction. Phillips does not allege that the negligence occurred in Maryland, that she flew out of or into an airport in Maryland, or even that she purchased the ticket in Maryland. Essentially all she is left with as a basis for jurisdiction is that she resides in Maryland. That is not enough. *See Carefirst*, 334 F.3d at 397. So even if the long-arm statute conferred specific jurisdiction over British Airways, the Constitution would not permit that exercise of jurisdiction.

To save her argument, Phillips cites three cases where courts held that they could exercise specific jurisdiction over airlines for incidents that happened outside of the states where the courts sat. In *Selke v. Germanwings Gmbh*, 261 F. Supp 3d 666, 670 (E.D. Va. 2017), the plaintiffs sued United Airlines for negligence after their family members died in a plane crash on a United partner airline, Germanwings. The court found that United's actions in Virginia were the "genesis of the dispute" because United sold the plaintiffs tickets in Virginia for their flight from Virginia to Europe and for their flight on the partner airlines in Europe. *Id.* at 674 (citing *CFA Inst.*, 551 F.3d at 295). In *Covington v. American Airlines*, No. MJM-22-725, 2023 WL 2648782, at *1 (D. Md. Mar. 27, 2023), the plaintiff sued American Airlines for an incident that occurred when the plaintiff boarded a flight from Charlotte, North Carolina to BWI. On the motion to dismiss for lack of personal jurisdiction, the court found that the original flight from BWI to Charlotte was the "genesis of the dispute," and so held that it could exercise jurisdiction over the airline. *Id.* at *4. Similarly, in *Broadus v. Delta Air Lines*, 101 F. Supp. 3d 554, 561 (M.D.N.C. 2015), the court concluded that it could exercise jurisdiction over Delta in North Carolina for injuries that occurred in Atlanta because the plaintiffs originally flew out of Greensboro, North Carolina on a round-trip flight.

These cases are not this case. Here, Phillips does not allege that she bought her ticket from British Airways in Maryland, that she flew on a British Airways plane from or to an airport in Maryland, or that the alleged negligence occurred in Maryland. In each of the three cases Phillips cites, at least one of these connections to the forum state was present. British Airways' conduct in Maryland, unlike the defendants' conduct in those cases, is not the "genesis of the dispute." *See CFA Inst.*, 551 F.3d at 295. The Court does not have specific jurisdiction over British Airways.

\*       \*       \*

The Court does not have general jurisdiction over British Airways because it is not headquartered or incorporated in Maryland, and it is not otherwise at home in the state. The Court does not have specific jurisdiction over the defendant either, because Maryland's long-arm statute does not confer it and due process would not permit it anyway. For these reasons, the Court does not have personal jurisdiction over British Airways.

## IV.  Conclusion

British Airways' motion to dismiss for lack of personal jurisdiction is granted. A separate order follows.


Date:   August 5, 2024

_____
Deborah L. Boardman
United States District Judge